UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:  NEWS PUBLISHING COMPANY,           :
      a Georgia corporation,                        :           Chapter 11
                                                          :           Case 13-40002
                                                          :
      Debtor.                                            :
_____   :

**APPLICATION FOR ORDER AUTHORIZING THE RETENTION AND**

**EMPLOYMENT OF CARR, RIGGS & INGRAM, LLC *NUNC PRO TUNC* TO THE**

**PETITION DATE, AS ACCOUNTANTS TO THE DEBTOR PURSUANT TO 11 U.S.C. §§**

**327, 328, 330 AND 331, AND FED. R. BANKR. P. 2014(a) AND 2016**

COMES NOW News Publishing Company, a Georgia corporation, debtor and debtor in

possession in the above-styled chapter 11 case ("Debtor), by its attorneys, Smith Conerly LLP,

and hereby submits this application (the "Application") for entry of an order authorizing the

retention and employment of Carr, Riggs & Ingram, LLC ("CRI") as accountants to the Debtor

pursuant to 11 U.S.C. §§ 327, 328, 330 and 331, and Fed. R. Bankr. P. 2014(a) and 2016. In

support of this Application, the Debtor relies on the Affidavit of Oliver Holmes (the "Holmes

Affidavit"), a true and correct copy of which is annexed hereto as Exhibit "A". In further

support of this Application, the Debtor respectfully states as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2). Venue of the Debtor's

chapter 11 case and this Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory predicates for the relief sought herein are 11 U.S.C. §§ 327, 328, 329 and 330, and Fed. R. Bankr. P. 2014(a) and 2016.

## Background

3.        On January 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing this chapter 11 case. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.        The Debtor is a privately held community news and information corporation, organized under the laws of the State of Georgia.

5.        Debtor currently publishes one (1) paid daily paper, five (5) paid weekly newspapers, seven (7) free newspapers, shoppers and niche publications and six (6) newspaper and niche websites located in urban, suburban and rural markets. Cherokee Publishing Company, Inc., an Alabama corporation ("Cherokee") is a wholly owned subsidiary of Debtor. Cherokee currently publishes one (1) paid daily paper. Debtor also operates a substantial commercial printing operation. The Debtor's and Cherokee's publications, websites and printing businesses (collectively, the "Business") are a fully-functional going concern that provides services to meet the needs of their customers.

6.        The Debtor's publications have a very loyal readership, provide in-depth local market coverage and possess high audience penetration rates and a high demographic quality of readers. The Debtor's publications, therefore, are an attractive and cost-effective means for advertisers to reach targeted customers.

7.     The Debtor seeks to retain and employ CRI as its accountant to (a) provide tax return preparation services to the Debtor, in accordance with the terms and conditions set forth in the engagement letter agreement between CRI and Debtor, dated January 17, 2013 (the "Engagement Agreement"), a copy of which is annexed to the Holmes Affidavit as Exhibit A and (b) provide tax consulting services to the Debtor and Cherokee, in accordance with the terms of the Engagement Agreement. The Debtor, therefore, requests entry of an order authorizing the Debtor to retain and employ CRI pursuant to 11 U.S.C. §§ 327, 328, 330 and 331, *nunc pro tunc* to the Petition Date.

## Services to be Rendered

8.     The Debtor anticipates that CRI may render the following services in this case:

(a)     Prepare the following tax returns for the Debtor and Cherokee for the year ended December 31, 2012:

(1)     Consolidated US Corporation Income Tax Returns for an S Corporation for the Debtor;

(2)     Georgia State Income Tax Return for the Debtor;

(3)     Alabama State Income Tax Return for Cherokee;

(b)     Prepare quarterly and annual federal and state tax returns for the Debtor and Cherokee; prepare of all other financial documents required by federal or state law; all other work indicated by the accountant's analysis of the records of the Debtor; and all other work necessary to assist the estate to comply with the reporting and accounting requirements of this Chapter 11 case;

(c)      Review claims filed by the Internal Revenue Service to determine the

validity of the amounts claimed and to assist in formulating a plan of

reorganization;

(d)      Provide services in connection with the Debtor's defined benefit pension

plan and Debtor's 401(K) plan. Where permitted by law, CRI will be

compensated directly from the Plan; and

(e)      Such other work as may be indicated by the accountant's analysis of the

records of the Debtor and the estate.

9.      Subject to this Court's approval of the Application, CRI is willing to

serve as the Debtor' accountant and to perform the services described above.

### Qualifications and Professionals

10.      The Debtor has employed CRI as their accountant since August, 2012. By

virtue of its pre-bankruptcy engagement, CRI is familiar with the Debtor's business records,

financial statements and other financial information and is qualified to continue to provide

accounting services to the Debtor. As such, retaining CRI is an efficient and cost effective

manner in which the Debtor may obtain the requisite services.

11.      The Debtor requires knowledgeable accountants to continue to render

professional accounting services, and CRI is particularly well suited to provide the type of

professional tax services the Debtor require.

12.      In addition, CRI has considerable experience rendering accounting

services to Debtor and other parties in numerous chapter 11 cases. As such, CRI is qualified to

perform the work required in this case.

## Disinterestedness of Professionals

13.     To the best of the Debtor's knowledge and based upon the Holmes Affidavit, CRI is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14) as modified by 11 U.S.C. § 1107(b).

14.     To the best of the Debtor's knowledge and based upon the Holmes Affidavit, CRI does not hold or represent an interest adverse to the Debtor's estate with respect to the matters on which CRI will be employed, in accordance with 11 U.S.C. § 327.

15.     In the 90 days prior to the Petition Date, CRI has received payments of $7,127.35 for services rendered. Neither the Debtor nor CRI believes this payment is subject to recovery as a preferential payment, as it was made in the ordinary course of business and/or in exchange for new value provided by CRI. To the extent the return of such payment may be sought, CRI will waive any resulting claim.

16.     To the best of the Debtor's knowledge and based upon the Holmes Affidavit, (a) CRI's connections with the Debtor, creditors, any other party in interest, or their respective attorneys are disclosed in the Holmes Affidavit; and (b) the CRI professionals working on this matter are not relatives of the United States Trustee of the Northern District of Georgia or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Northern District of Georgia.

17.     CRI has not provided, and will not provide, any professional services to any of the creditors, other parties in interest, or their respective attorneys or accountants with regard to any matter related to this Chapter 11 case.

## **Professional Compensation**

18.     Under the terms of the Engagement Agreement, the Debtor has agreed to pay CRI fees at CRI's standard hourly rates. The current normal and customary hourly rates for accounting and tax consulting services to be rendered by CRI and applicable herein, which are subject to periodic adjustments, are as follows:

| Level | Hourly rates |
|---|---|
| Partners | $325-$420 |
| Manager | $250-$380 |
| Supervisors | $200-$245 |
| Seniors | $150-$195 |
| Staff | $110-$145 |

19.     In addition, in accordance with its standard policy, CRI will charge the Debtor for all expenses incurred in connection with the services provided to the Debtor, including telephone and telecopier toll charges, photocopying charges and travel expenses. The amounts charged to CRI for such expenses are consistent with charges billed to other similar clients.

20.     The Debtor believes that these fee and expense arrangements are reasonable and appropriate under the standards set forth in Bankruptcy Code § 328(a) given: (a) the complexity and volume of the services to be rendered by CRI in connection with this Chapter 11 case; (b) CRI's commitment to performing these services in a timely and thorough manner; and (c) the market rates charged by other similar professionals providing similar services to chapter 11 debtors.

21.    CRI intends to apply to the Court for the allowance of compensation for

professional services rendered and reimbursement of expenses incurred in accordance with the

applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. CRI has agreed to

accept as compensation such sums as may be allowed by the Court. CRI understands that interim

and final fee awards are subject to approval by this Court.

### *Nunc Pro Tunc* **Relief Requested**

22.    Pursuant to the Debtor's request, CRI commenced its engagements

immediately and with assurances that the Debtor would seek approval of its employment *nunc*

*pro tunc* to the Petition Date.

23.    Based upon the foregoing, the Debtor submits that cause exists to authorize

the retention of CRI *nunc pro tunc* to the Petition Date.

### Notice

24.    Notice of this Motion has been given to: (i) the Office of the United

States Trustee for the Northern District of Georgia, Rome Division; (ii) those creditors

holding the 20 largest unsecured claims against the Debtor; (iii) counsel to the agents for the

Debtor's pre-petition secured lenders.

### No Prior Request

25.    No prior application for the relief requested herein has been made to this

or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, substantially in the form attached hereto, (i) granting this Application, (ii) authorizing the Debtor to retain and employ CRI as their accountants *nunc pro tunc* to the Petition Date to perform the services set forth herein, and (iii) granting such other and further relief as is just and proper.

Dated: January 14, 2013

/s/ J. Nevin Smith
J. Nevin Smith
Georgia Bar Number 661110

Smith Conerly LLP
402 Newnan Street
Carrollton, GA 30117
(770) 834-1160

8

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| In re:   NEWS PUBLISHING COMPANY, | : | |
| a Georgia corporation, | : | Chapter 11 |
| | : | Case 13-40002 |
| | : | |
| Debtor. | : | |
| _____ | : | |

**ORDER GRANTING APPLICATION FOR ORDER AUTHORIZING THE
RETENTION AND EMPLOYMENT OF CARR, RIGGS & INGRAM, LLC *NUNC PRO
TUNC* TO THE PETITION DATE, AS ACCOUNTANTS TO THE DEBTOR PURSUANT
TO 11 U.S.C. §§ 327, 328, 330 AND 331, AND  FED. R. BANKR. P. 2014(a) AND 2016**

Upon consideration of the application (the "Application") submitted by the above-

captioned Debtor and Debtor in possession (the "Debtor") for entry of an order authorizing the

retention and employment of CARR, RIGGS & INGRAM, LLC ("CRI") as accountant to the

Debtor pursuant to 11 U.S.C. §§ 327, 328, 330 and 331, Fed. R. Bankr. P. 2014(a) and 2016; and

upon the Affidavit of Oliver Holmes in Support of the Application of the Debtor for an Order

Authorizing and Approving the Retention and Employment of CARR, RIGGS & INGRAM, LLC

as Accountant to the Debtor, *Nunc Pro Tunc* to the Petition Date, attached to the Application as

Exhibit A; and the Court having jurisdiction to consider the Application under 28 U.S.C. §§ 157

and 1334; and consideration of the Application and the relief requested therein being a core

proceeding under 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28

U.S.C. §§1408 and 1409; and due and proper notice of the Application having been given; and it

appearing that no further or other notice is required; and the Court being satisfied that (a) CRI is

a "disinterested person" as that term is defined under 11 U.S.C. § 101(14) and represents no

interests adverse to the Debtor or the Debtor's estate with respect to the matters for which it will

be engaged and (b) the retention of CRI is necessary and in the best interest of the Debtor's estate

and creditors; and it appearing that the relief requested in the Application is in the best interest of

the Debtor, its estate, creditors and equity security holders; and upon all of the proceedings had

before the Court and upon due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that the Application is granted in its entirety; and it is further

**ORDERED** that in accordance with 11 U.S.C. § 327(a), the Debtor is authorized and

empowered to retain and employ CRI, *nunc pro tunc* to the Petition Date, as their accountant to

perform all of the services set forth in the Application and the Affidavit of Oliver Holmes; and it

is further

**ORDERED** that CRI shall be compensated for services rendered to the Debtor,

including fees and expenses incurred, pursuant to the filing of appropriate applications for

allowance of interim and final compensation in accordance with the procedures set forth in 11

U.S.C. §§ 330 and 331, the Federal Rules of Bankruptcy Procedure, and any other Order

entered by this Court establishing procedures for the interim compensation and reimbursement of

expenses of professionals retained herein; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation and/or interpretation of this Order.

## END OF DOCUMENT

Case Number:  13-40002

Prepared and Presented by:

By:    /s/ J. Nevin Smith
    J. Nevin Smith
    Georgia Bar No. 661110

SMITH CONERLY LLP
402 Newnan Street
Carrollton, Georgia 30117
770-834-1160

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:  NEWS PUBLISHING COMPANY,                    :
        a Georgia corporation,                      :          Chapter 11
                                                    :          Case 13-40002
                                                    :
        Debtor.                                     :
                                                    :

AFFIDAVIT OF OLIVER HOLMES IN SUPPORT OF APPLICATION OF THE
DEBTOR FOR AN ORDER AUTHORIZING AND APPROVING THE RETENTION
AND EMPLOYMENT OF CARR, RIGGS & INGRAM, LLC
AS ACCOUNTANT TO THE DEBTOR

Oliver Holmes, being duly sworn, deposes and says:

1.      I am a Certified Public Accountant, licensed under the laws of the State of

Georgia, and I am a partner of CARR, RIGGS & INGRAM, LLC ("CRI"), with offices at

4360 Chamblee Dunwoody Road, Suite 420, Atlanta, Georgia 30341.

2.      I submit this affidavit (the "Affidavit") on behalf of CRI in support of the

application (the "Application") of News Publishing Company (the "Debtor") and its

subsidiary Cherokee Publishing Company, Inc., an Alabama corporation ("Cherokee"), in

this chapter 11 case for entry of an order approving the retention of CRI as accountants for

the Debtor and Cherokee pursuant to the terms and conditions of that certain engagement

letter agreement, dated January 17, 2013 (the " Engagement Agreement"), a copy of which

is annexed hereto as Exhibit A. I have personal knowledge of the matters set forth herein,

and if called as a witness, would testify competently thereto.

3.      The facts set forth in my Affidavit are based upon my personal knowledge.

Upon information and belief, and upon client matter records kept in the ordinary course of

business that were reviewed by me or other employees of CRI under my supervision and

direction. The procedures pursuant to which CRI determined whether there were any connections between CRI and interested parties in this case are described below.

SCOPE OF SERVICES

4.      As set forth in further detail in the Engagement Agreement, CRI has agreed to provide the following professional tax services to the Debtor:

      (a)      Prepare the following tax returns for the Debtor and Cherokee for the year ended December 31, 2012:

            (1)      Consolidated US Corporation Income Tax Returns for an S Corporation for the Debtor;

            (2)      Georgia State Income Tax Return for the Debtor;

            (3)      Alabama State Income Tax Return for Cherokee;

      (b)      Prepare quarterly and annual federal and state tax returns for the Debtor and Cherokee; prepare of all other financial documents required by federal or state law; all other work indicated by the accountant's analysis of the records of the Debtor; and all other work necessary to assist the estate to comply with the reporting and accounting requirements of this Chapter 11 case;

      (c)      Review claims filed by the Internal Revenue Service to determine the validity of the amounts claimed and to assist in formulating a plan of reorganization;

      (d)      Provide services in connection with the Debtor's defined benefit pension plan and Debtor's 401(K) plan. Where permitted by law, CRI will be compensated directly from the Plan; and

      (e)      Such other work as may be indicated by the accountant's analysis of the

records of the Debtor and the estate.

5.     The Debtor has required and will require knowledgeable accountants to continue to render theses professional tax services during its Chapter 11 case.  CRI is particularly well suited to provide the type of professional tax services the Debtor requires.

### PROFESSIONAL COMPENSATION

8.     Under the terms of the Engagement Agreement, CRI's services will be charged at our standard hourly rate. The current normal and customary hourly rates for tax consulting services to be rendered by CRI and applicable herein are as follows:

| Level | Hourly rates |
|---|---|
| Partners | $325-$420 |
| Manager | $250-$380 |
| Supervisors | $200-$245 |
| Seniors | $150-$195 |
| Staff | $110-$145 |

10.     These hourly rates are subject to periodic adjustments.

11.     Fees are subject to this Court's approval upon proper application therefore and in accordance with 11 U.S.C. § 330, the Federal Rules of Bankruptcy Procedure and the United States Trustee's Guidelines for Fees and Disbursements, and in accordance with any order establishing procedures for the payment of professionals in this case.

12.     In accordance with its standard policy, CRI will charge the Debtor for all expenses incurred in connection with the services provided to the Debtor, including telephone and telecopier toll charges, photocopying charges and travel expenses. The amounts charged to CRI for such expenses are consistent with charges billed to other similar clients.

## CRI'S DISINTERESTEDNESS

13.    In connection with the preparation of this Affidavit and to ensure the disinterestedness of CRI, CRI's professionals conducted a review of their contacts with the Debtor, the agents for the Debtor's secured lenders, the entities holding the 20 largest unsecured claims against the Debtor and other parties in interest that were reasonably known to CRI.

14.    To the best of my knowledge neither my firm nor ally associate thereof has had any connection with the Debtor's creditors, or any other party in interest herein, except CRI may have (a) worked with and/or for the professionals in this Chapter 11 case in other Chapter 11 cases, or (b) been, or may be currently, engaged as accountants by certain other creditors of the Debtor, although no one professional and/or creditor has comprised more than 0.1% of the firm's annual revenue in its most recently completed fiscal year. CRI will not represent any creditor or party in interest herein in connection with any matter adverse to the Debtor or its bankruptcy estate.

15.    CRI has over 750 professional employees. It is possible that certain employees of CRI may have business associations with parties in interest in this case that are unrelated to this Chapter 11 case. CRI will ensure that no employees with any relationships that could result in a material adverse interest in this Chapter 11 case will provide services to the Debtor.

16.    CRI has not received any payments from the Debtor in connection with the Engagement Agreement. During the 90-day period preceding the filing of the Debtor's case, CRI received payments totaling $7,127.35 for services rendered.  Neither the Debtor nor CRI believes these payments are subject to recovery as preferential

payments as they were made in the ordinary course of business and/or in exchange for new value provided by CRI. To the extent the return of such payments may be sought, CRI will waive any resulting claim.

17.    To the best of my knowledge, no managing director or employee of CRI generally has any connection to the United States Trustee of the Northern District of Georgia or of any known employee in the office thereof, CRI is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b). CRI will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, CRI will supplement its disclosure to this Court.

18.    In accordance with 11 U.S.C. § 504, I hereby state that there is no agreement or understanding between CRI and any other entity for the sharing of compensation received or to be received for services rendered in connection with this proceeding.

19.    This declaration is provided in accordance with 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014.

WHEREFORE your deponent asks for an appropriate order authorizing the retention

and employment of CRI *nunc pro tunc* to January 1, 2013.

CARR, RIGGS & INGRAM, LLC

_____ CPA

Print Name: _Oliver W. Holmes, Jr. CPA_

Sworn to and subscribed to before
me this _18th_ day of January, 2013

_Linda Purnell_
Notary Public

My Commission Expires: Notary Public, Cobb County, Georgia
My Commission Expires Aug. 30 2016





**Carr, Riggs & Ingram, LLC**
**Certified Public Accountants**
4360 Chamblee Dunwoody Road, Suite 420
Atlanta, Georgia 30341
Telephone 770.457.6606 • Fax 770.451.2873
www.cricpa.com

January 17, 2013

Mr. Burgett Mooney, III
News Publishing Company
305 East 6th Avenue
P.O. Box 1633
Rome, GA  30162

Dear Mr. Mooney:

This letter is to confirm and specify the terms of our engagement and to clarify the nature and extent of the services we will provide for News Publishing Company (Debtor), Cherokee Publishing Company, Inc. (Cherokee) and News Publishing Company 401(K) Profit Sharing Plan (401(K) Plan).  Also, by sending you the engagement letter, we have assumed that you are the person responsible for the tax matters of the aforementioned entities, and as sponsor, the Debtor is responsible for the tax and accounting matters relating to the 401(K) Profit Sharing Plan.  If this is not a correct assumption, please furnish us with the name of the tax matters person(s).

Our engagement will be designed to perform the following services, if necessary:

- a)  Prepare the following tax returns for the Debtor and Cherokee for the year ended December 31, 2012:
    1) Consolidated US Corporation Income Tax Returns for a C Corporation for the Debtor.
    2) Georgia State Income Tax Return for the Debtor.
    3) Alabama State Income Tax Return for Cherokee.

- b)  Prepare quarterly and annual federal and state tax returns for the Debtor and Cherokee; prepare of all other financial documents required by federal or state law; all other work indicated by the accountant's analysis of the records of the Debtor; and all other work necessary to assist the estate to comply with the reporting and accounting requirements of this Chapter 11 case.

- c)  Review claims filed by the Internal Revenue Service to determine the validity of the amounts claimed and to assist in formulating a plan of reorganization.

- d)  Provide services in connection with the Debtor's defined benefit pension plan and Debtor's 401(K) plan. Where permitted by law, CRI will be compensated directly from the Plan.  If an audit of the 401(K) Plan is required, a separate engagement letter will be issued to the sponsor.

- e)  Such other work as may be indicated by the accountant's analysis of the records of the Debtor and the estate.



News Publishing Company
Page 2

You are responsible for the safeguarding of assets, for the proper recording of transactions in the books of accounts, for the substantial accuracy of the financial records, and the full and accurate disclosure to us of all relevant facts affecting the return(s). You also have the final responsibility for the tax return(s) and, therefore, you should review the return carefully before you sign and file it.

You are responsible for making all management decisions and performing all management functions; for designating an individual with suitable skill, knowledge, or experience to oversee the services we provide; and for evaluating the adequacy and results of the services performed and accepting responsibility for such services.

Our work in connection with the preparation of your income tax returns does not include any procedures designed to discover defalcations or other irregularities, should any exist. The returns will be prepared solely from information provided to us without verification by us.

We will use our professional judgment in preparing your returns. Whenever we are aware that a possible applicable tax law is unclear or that there are conflicting interpretations of the law by authorities (e.g., tax agencies and courts), we will explain the possible positions that may be taken on your return. In accordance with our professional standards, we will follow whatever position you request, as long as it is consistent with the codes, regulations, and interpretations that have been promulgated. If the Internal Revenue Service should later contest the position taken, there may be an assessment of additional tax plus interest and penalties. We assume no liability for any such additional penalties or assessments. In the event, however, that you ask us to take a position that in our professional judgment will not meet the applicable laws and standards promulgated, we reserve the right to stop work and shall not be liable to you for any damages that occur as a result of ceasing to render services.

The law provides various penalties that may be imposed when taxpayers understate their tax liability. If you would like information on the amount or circumstances of these penalties, please contact us.

The return(s) may be selected for review by the taxing authorities. In the event of an audit, you may be requested to produce documents, records, or other evidence to substantiate the items of income and deduction shown on a tax return. Any proposed adjustments by the examining agent are subject to certain rights of appeal. In the event of a tax examination, we will be available, upon request, to represent you. However, such additional services are not included in our fees for preparation of the tax return(s).

Certain communications involving tax advice may be privileged and not subject to disclosure to the IRS. By disclosing the contents of those communications to anyone, or by turning over information about those communications to the government, you, your employees, or agents may be waiving this privilege. To protect this right to privileged communication, please consult with us or your attorney prior to disclosing any information about our tax advice. Should you decide it is appropriate for us to disclose any potentially privileged communication, you agree to provide us with written, advance authority to make that disclosure.



News Publishing Company
Page 3

The Internal Revenue Code and regulations impose preparation and disclosure standards with noncompliance penalties on both the preparer of a tax return and on the taxpayer. To avoid exposure to these penalties, it may be necessary in some cases to make certain disclosures to you and/or in the tax return concerning positions taken on the return that do not meet these standards. Accordingly, we will advise you if we identify such a situation, and we will discuss those tax positions that may increase the risk of exposure to penalties and any recommended disclosures before completing the preparation of the return. If we conclude that we are obligated to disclose a position and you refuse to permit disclosure, we reserve the right to withdraw from the engagement. Likewise, where we disagree about the obligation to disclose a position, you also have a right to choose another professional to prepare your return. In either event, you agree to compensate us for our services to the date of the withdrawal. Our engagement with you will terminate upon our withdrawal.

If, during our work, we discover information that affects prior-year tax returns, we will make you aware of the facts. However, we cannot be responsible for identifying all items that may affect prior-year returns. If you become aware of such information during the year, please contact us to discuss the best resolution of the issue. We will be happy to prepare appropriate amended returns as a separate engagement.

Our fee for these services will be based upon the amount of time required at standard billing rates plus out-of-pocket expenses. All invoices are payable upon presentation. We may require a retainer prior to the commencement of each project and will make such requests from time to time.

If the foregoing fairly sets forth your understanding, please sign the enclosed copy of this letter in the space indicated and return it to our office. However, if there are additional returns you expect us to prepare, please note this at the end of the returned copy of this letter, just below your signature.

We want to express our appreciation for this opportunity to work with you.

Very truly yours,

*CARR, Riggs & Ingram, LLC*

CARR, RIGGS & INGRAM, LLC

Accepted By: _____

Title: _____

Date: _____ 1.17.2013 _____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:   NEWS PUBLISHING COMPANY,        :
a Georgia corporation,                   :         Chapter 11
                                         :         Case 13-40002
                                         :
Debtor.                                  :
_____:

### CERTIFICATE OF SERVICE

I, J. Nevin Smith, certify that I am over 18 years of age and that on January 21, 2013,

I served a copy of the following documents on the persons or entitles at the addresses listed on the

attached Exhibit "A" attached hereto:

Application for Order Authorizing the Retention and Employment of Carr, Riggs
& Ingram, LLC Nunc Pro Tunc to the Petition Date, as Accountants to the Debtor
pursuant to 11 U.S.C. §§ 327, 328, 330, and 331, and Fed. R. Bankr. P. 2014(a)
and 2016

This 21ˢᵗ day of January, 2013.

SMITH CONERLY LLP

_____/s/ J. Nevin Smith_
J. Nevin Smith (Ga Bar No. 661110)
jsmith@smithconerly.com
402 Newnan Street
Carrollton, Georgia 30117
(770) 834-1160 (telephone)
(770) 834-1190 (facsimile)

COUNSEL FOR DEBTOR

EXHIBIT "A"

Martin P. Ochs
United States Trustee
Richard B. Russell Building
75 Spring Street, S.W., Room 362
Atlanta, Georgia 30303

Thomas D. Richardson, Esq.
Brinson Askew Berry Seigler
Richardson & Davis LLP
P.O. Box 5007
Rome, Georgia 30162-5007

Matthew R. Brooks, Esq.
Troutman Sanders LLP
600 Peachtree St. NE
Suite 5200
Atlanta, GA 30308

Advantage Newspaper Consultants
597 Oliver Street
Fayetteville, NC
28304-4432

Digital Technology Intl.
P.O. Box 6197
Chicago, IL  60680-6197

Greater Rome Bank
P.O. Box 529
Rome, GA 30165

Jane M. Morgan
2055 Horseleg Creek Road SW
Rome, GA 30161

Mary Sibley Banks
435 Mt. Alto Road
Rome, GA 30165

News Publishing Pension Plan
305 E. 6th Avenue
Rome, GA 30162

Purchase Power
P.O. Box 371874
Pittsburgh, PA  15250-7874

Southern Lithoplate, Inc.
P.O. Box 9400
Wake Forest, NC 27588-9400

SP Newsprint Co.
P.O. Box 101449
Atlanta, GA 30392-1449

Spring Creek Properties
384 David Road SE
Rome, GA 30161

Sun Chemical
P.O. Box 2193
Carol Stream, IL  61032-2193

United Community Bank
307 E. 2nd Avenue
Rome, GA 30162

Wallis Printing Company
6 Redmond Court
Rome, GA 30162-1674

Blue Cross Blue Shield of GA
P.O. Box 100376
Atlanta, GA 30384-0376

Citizens First Bank
1148 Broadway
Columbus, GA 31901

Citizens First Bank
701 Broad Street
Rome, GA 30161

Eastman Kodak Company
Main US Collections
1790 Solutions Center
Chicago, IL  60677-1007

3

Elizabeth M. Mozley
1 Pinewood Terrace
Rome, GA 30161

Employment Alliances LLC
d/b/a Etowah Employment
255 North 5th Avenue
Rome, GA 30165

Floyd County Tax Commissioner
P.O. Box 26
Rome, GA 30162-0026

Northwest Georgia Capital, LLC
305 East 6th Avenue
Rome, GA  30162

J. Michael Kaplan
J. Michael Kaplan, Attorney at Law, PC
P.O. Box 471
Columbus, GA 31902-0471

Dan D. Wright, Jr.
Lazega & Johanson, LLC
3520 Piedmont Road, NE
Suite 415
Atlanta, GA 30305

Ronald B. Gaither
Schiff Hardin, LLP
One Atlantic Center, Suite 2300
1201 West Peachtree Street
Atlanta, GA 30309

Richard J. Lundy
Charles E. Morris, Jr.
Parker and Lundy
P.O. Box 1018
Cedartown, GA 30125

Russell D. Waldon
John E. Alday
Waldon Adelman Castilla Hiestand & Prout
900 Circle 75 Parkway, Suite 1040
Atlanta, GA 30339

Ron C. Bingham, II, Esq.
Eric J. Breithaupt, Esq.
Stites & Harbison, PLLC
303 Peachtree St., NE
2800 SunTrust Plaza
Atlanta, GA30308

Eric J. Breithaupt, Esq.
Stites & Harbison, PLLC
303 Peachtree Street, NE
2800 SunTrust Plaza
Atlanta, GA 30308