

**IT IS ORDERED as set forth below:**

**Date: January 29, 2015**

*Mary Grace Diehl*

_____

**Mary Grace Diehl**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| In re:   NEWS PUBLISHING COMPANY, | : | |
| a Georgia corporation, | : | Chapter 11 |
| | : | Case 13-40002 |
| | : | |
| Debtor. | : | |
| _____ | : | |

ORDER (A) AUTHORIZING THE SALE OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS
AND GRANTING RELATED RELIEF; (B) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING
RELATED RELIEF

Upon consideration of the motion (Docket No. 153) (the "Motion") of News

Publishing Company, the above-captioned debtor and debtor-in- possession (the

"Debtor"), for entry of an order, among other things: (i) approving the Asset Purchase

Agreement, and amendments thereto substantially in the form attached as <u>Exhibit</u> <u>"A"</u> to

the Notice of Sale Hearing (Docket No. 184) (the "APA") by and between the Debtor and

Times Journal, Inc., or its designee or designees (the "Purchaser"),  (ii) authorizing  the

1

sale  (the "Sale") of Assets of Debtor (the "Purchased Assets", as defined  in the APA)  to

Purchaser free and clear of all liens, claims, encumbrances and interests of any kind or

nature (the "Encumbrances"), except for Permitted Encumbrances provided by the APA,

(iii) authorizing the assumption and assignment of certain executory contracts and leases,

as set forth in the APA (the "Assumed Contracts"); and (iv) granting other related relief;

and it appearing that the relief requested in the Motion is in the best interests of the

Debtor's estate, its creditors, and other parties in interest; and it appearing that this Court

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and adequate

notice of the Motion and opportunity for objection having been given, and all objections

to the relief requested in the Motion having been withdrawn or overruled; and this Court

having heard statements of counsel and the evidence presented in support of the relief

requested by the Debtor in the Motion at a hearing before this Court on January 28, 2015

(the "Sale Hearing"); and it appearing that no other notice need be given; and it further

appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing

establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor:

THE COURT HEREBY FINDS THAT:

<u>Jurisdiction,  Final Order and Statutory Predicates</u>

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      The statutory predicates for the relief requested in the Motion are Sections 105(a), 363 and 365 of title 11, United States Code (the "Bankruptcy Code") and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

3

E.     This Court entered the Order (I) Approving Sale Procedures; (II) Authorizing the Debtor to Grant Certain Bid Protections; (III) Scheduling a Hearing to Consider the Sale of Substantially All of the Debtor's Assets; and (IV) Approving the Form and Manner of Notices Related Thereto (the "Sale Procedures Order") on November 20, 2014 (Docket No. 171).

## Notice of the Sale and Auction

F.     Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested Persons and entities, including, but not limited to, the following parties:

1.     the Office of the U.S. Trustee for the Northern District of Georgia, 362 Richard Russell Federal Building, 75 Spring Street, SW, Atlanta, GA 30303, Attention: Martin P. Ochs;

2.     counsel to the agent to the Debtor's pre-petition secured first lien lender, Thomas D. Richardson, Esq., Brinson Askew Berry Seigler Richardson & Davis LLP, P.O. Box 5007, Rome, Georgia 30162-5007;

3.     counsel to the agent to the Debtor's pre-petition secured lender, Matthew R. Brooks, Esq., Troutman Sanders LLP, 600 Peachtree St. NE, Suite 5200, Atlanta, Georgia 30308;

4.     all parties who have specifically requested notice pursuant to Bankruptcy Rule 2002;

5.     counsel to Purchaser, H. Scott Gregory, Jr., Esq., Gregory, Doyle, Calhoun & Rogers, LLC, 49 Atlanta Street, Marietta, Georgia 30060, E-mail: sgregory@gregorydoylefirm.com;

6.     the counterparties to each of the Assumed Contracts (each, a "Contract Counterparty"); and

7.     all Persons known or reasonably believed to have expressed an interest in acquiring the Purchased Assets.

4

G.      In accordance with the provisions of the Sale Procedures Order, the Debtor has served notice upon the Contract Counterparties: (i) that the Debtor seeks to assume and assign the Assumed Contracts on the Closing Date; and (ii) of the relevant cure amounts set forth on Exhibit "A" annexed hereto (the "Cure Costs"). The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing Cure Costs for the Assumed Contracts. Each of the Contract Counterparties has had an opportunity to object to the Cure Costs set forth in the notice.

H.      The Debtor has articulated good and sufficient  reasons, and have reasonably exercised their business judgment in an appropriate manner, for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation: (i) determination of the final Cure Costs; and (ii) approval and authorization to serve the  Sale Notice (as defined in the Sale Procedures Order).

I.      The Sale Notice provided all interested parties with timely and proper notice of the Sale, Sale Hearing and Auction.

J.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Motion, Auction, Sale Hearing, and Sale has been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtor also has complied with all obligations to provide notice of the Motion, Auction, Sale Hearing and Sale required by the Sale Procedures Order. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Sale Hearing, Sale or assumption and assignment of the Assumed Contracts is required.

5

K.      The disclosures made by the Debtor concerning the APA, Auction, Sale, Sale

Hearing and the assumption and assignment of the Assumed Contracts were good, complete

and adequate.

<u>Good Faith of the Purchaser</u>

L.      The Purchaser meets all of the requirements for a Qualified Bidder in

accordance with the Sale Procedures.

M.      The Purchaser is purchasing the Purchased Assets in good faith and is a good

faith buyer within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore

entitled to the full protection of that provision, and otherwise has proceeded in good faith in all

respects in connection with this proceeding in that, *inter alia:* (i) the Purchaser recognized that

the Debtor was free to deal with any other party interested in acquiring the Purchased

Assets; (ii) the Purchaser complied with the provisions in the Sale Procedures Order; (iii) the

Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Sale

Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or

arrangements entered into by the Purchaser in connection with the Sale have been disclosed; (v)

the Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or

inaction; and (vi) the negotiation and execution of the APA was at arms' length and in good

faith.

6

<u>Highest and Best Offer</u>

N.       The Debtor conducted an auction process in accordance, and have otherwise

complied in all respects, with the Sale Procedures Order. The auction process set forth in the

Sale Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity

to make a higher or otherwise better offer to purchase all or any portion of the Purchased

Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith

manner and a reasonable opportunity has been given to any interested party to make a higher

and better offer for the Purchased Assets.

O.       The APA constitutes the highest and best offer for the Purchased Assets, and

will provide a greater recovery for the Debtor's estate than would be provided by any other

available alternative. The Debtor's determination that the APA constitutes the highest and best

offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business

judgment.

P.       The APA represents a fair and reasonable offer to purchase the Purchased Assets

under the circumstances of the Debtor's Chapter 11 case (the "Chapter 11 Case"). No other

Person or entity or group of entities, alone or in combination, has offered to purchase the

Purchased Assets for greater value to the Debtor's estate than the Purchaser.

Q.       Approval of the Motion and the APA and the consummation of the transactions

contemplated thereby is in the best interests of the Debtor, its creditors, its estate and other

parties in interest.

7

R.      The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

### **No Fraudulent Transfer; Purchaser Not a Successor to the Seller**

S.      The consideration provided by the Purchaser pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof and the District of Columbia.

T.      The Purchaser is not a mere continuation of the Debtor or its estate and there is no continuity between the Purchaser and the Debtor.  The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not a successor to the Debtor or its estate and the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtor. The sale of the Purchased Assets to the Purchaser is not being undertaken for the purpose of escaping liability for the Debtor's debts.

### Validity  of Transfer

U.      The Debtor has full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

V.      The transfer of each of the Purchased Assets to the Purchaser will be as of

the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest

the Purchaser with all right, title and interest of the Debtor to the Purchased Assets free and

clear of all Encumbrances accruing, arising or relating thereto any time prior to the Closing

Date, except for any Permitted Encumbrances.

### Section 363(l) Is Satisfied

W.      The Purchaser would not have entered into the APA and would not

consummate the transactions contemplated thereby if the sale of the Purchased Assets to the

Purchaser, and the assumption, assignment and sale of the Assumed Contracts to the

Purchaser, were not free and clear of all Encumbrances of any kind or nature whatsoever

(except the Permitted Encumbrances), or if the  Purchaser would, or in the future could be,

liable for any of such Encumbrances.

X.      The Debtor may  sell the Purchased Assets free and clear of all Encumbrances

against it, its estate or any of the Purchased Assets (except for the Permitted Encumbrances)

because, in each case, one or more of the standards set forth in Section 363(f)(l)-(5) of the

Bankruptcy Code has been satisfied. Those holders of Encumbrances against the Debtor, it's

estate or any of the Purchased Assets who did not object, or who withdrew their objections, to

the Sale or the Motion are deemed to have consented thereto pursuant to Section 363(f)(2) of

the Bankruptcy Code. Those holders, if any, of such Encumbrances who did object fall within

one or more of the other subsections of Section 363(f) and are adequately protected by having

their Encumbrances, if any, in each instance  against  the  Debtor,  its estate or any of the

Purchased Assets, attach to the cash proceeds of the Sale ultimately attributable to the

Purchased Assets in which such creditor alleges an interest, in the same order of priority, with

the same validity, force and effect that such creditor had prior to the Sale, subject to any

claims and defenses the Debtor and its estate may possess with respect thereto.

<u>Assumption and Assignment of the Assumed Contracts</u>

Y.      The assumption and assignment of the Assumed Contracts pursuant to the terms

of this Order is integral to the APA and is in the best interests of the Debtor and its estate,

creditors and other parties in interest, and represents the reasonable exercise of sound and

prudent business judgment by the Debtor.

Z.      The respective amounts, *i.e.,* the Cure Costs, set forth on <u>Exhibit "A"</u> annexed

hereto, are the sole amounts necessary under Sections 365(b)(l)(A) and (B) and 365(f)(2)(A) of

the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the

Assumed Contracts.

AA.      Pursuant to the terms of the APA, on the Closing Date or as soon as is

reasonably practicable thereafter, the Purchaser shall have, by paying the Cure Costs: (i) cured

and/or provided adequate assurance of cure of any monetary default existing prior to the

Closing Date under any of the Assumed Contracts, within the meaning of Section 365(b)(1)(A)

of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation

to any party for actual pecuniary loss to such party resulting from a default prior to the Closing

Date under any of the Assumed Contracts, within the meaning of Section 365(b)(l)(B) of the

Bankruptcy Code.

BB.     The Purchaser has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(l)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

<u>Compelling Circumstances  for an Immediate Sale</u>

CC.     To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA.  Time is of the essence in consummating the Sale.

DD.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the purchase price under the APA, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

EE.     The consummation of the transaction is legal; valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Sections 105(a), 363(b), 363(l), 363(m), 365(a), 365(b) and 365(c), and all of the applicable requirements of such Sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

THAT:

<u>General Provisions</u>

1.      The relief requested in the Motion is granted and approved, and the Sale

contemplated thereby and by the APA is approved as set forth in this Order.

2.      The Limited Objection of Synovus Bank to Sale of Substantially All of

Debtor's Assets and Request For Payment From Sale Proceeds and Related Relief is overruled.

3.      This Court's findings of fact and conclusions of law set forth in the Sale

Procedures Order are incorporated herein by reference.

4.      All objections to the Motion or the relief requested therein, to the extent not

previously withdrawn, are hereby overruled.

<u>Approval of the APA</u>

5.      The APA and all other ancillary documents, and all of the terms and conditions

thereof, are hereby approved.

6.      Pursuant to Section 363(b) of the Bankruptcy Code, the Debtor is authorized,

empowered and directed to (a) consummate the Sale of the Purchased Assets to the Purchaser

pursuant to and in accordance with the terms and conditions of the APA, (b) close the Sale as

contemplated in the APA and this Order, and (c) execute and deliver, perform under,

consummate, implement and close fully the APA, together with all additional instruments and

documents that may be reasonably necessary or desirable to implement the APA and the Sale,

including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

7.      This Order shall be binding in all respects upon the Debtor, its estate, all creditors, all holders of equity interests in the Debtor, all holders of any Claims (as defined herein) (whether known or unknown) against Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Purchaser and all successors and assigns of the Purchaser, and any trustee subsequently appointed in the Debtor's Chapter 11 Case or upon a conversion to Chapter 7 under the Bankruptcy Code of the Debtor's case. This Order and the APA shall inure to the benefit of the Debtor, its estate and creditors, the Purchaser and their respective successors and assigns.

<u>Transfer of the Purchased Assets</u>

8.      Pursuant to Sections 105(a), 363(b), 363(d), 365(b) and 365(c) of the Bankruptcy Code, the Debtor is authorized to transfer the Purchased Assets on the Closing Date. Such Purchased Assets shall be transferred to the Purchaser "<u>as is where is</u>" in accordance with the APA upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets. Upon the Debtor's receipt of the Purchase Price in accordance with this Order, the Purchased Assets shall be free and clear of all Encumbrances of any kind or nature (except the Permitted Encumbrances). On the Closing Date, the Purchaser shall take title to and possession of the Purchased Assets subject only to any Permitted Encumbrances.  Pursuant to Section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets, including but not limited to the Assumed Contracts, shall be free and clear of

13

any and all Encumbrances, including Encumbrances (i) that purport to give to any party a right

or option to  effect any forfeiture, modification, right of first refusal, or termination of the

Debtor's interests in the Purchased Assets, or any similar rights, (ii) relating to taxes arising

under or out of, in connection with, or in any way relating to the operation of the Purchased

Assets prior to the Closing, and (iii) relating to or arising under (A) all mortgages, deeds of

trust, security interests, conditional sale or other title retention agreements, pledges, liens,

judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if

any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income

or other exercise of any attributes of ownership and (B) all debts arising in any way

connection with any agreements, acts, or failures to act, of any of the Debtor or any of the

Debtor's predecessors or affiliates, claims (as defined in Section 101(5) of the Bankruptcy

Code, "Claims"), obligations, liabilities, demands, guaranties, options, rights of any kind or

nature, including setoff, subrogation or recoupment, contractual or other commitments,

indemnities, indemnity obligations and warranties relating to any acts, omissions or

circumstances arising prior to the Closing Date, including those constituting Excluded

Liabilities, restrictions, interests and matters of any kind and nature, whether known or

unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement

of these Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or

otherwise, including but not limited to Claims otherwise arising under doctrines of successor

liability or, any Claims or Encumbrances related to the Excluded Assets or the Excluded

Liabilities; except for Permitted Encumbrances, and shall be  free and clear of any and all

Claims, including,  without  limitation,  any and all Claims pursuant to any successor or

14

successor-in-interest liability theory; *provided , however,* that the Purchaser shall not be relieved of liability with respect to the Assumed Liabilities.

9.       All Encumbrances shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtor and its estate may possess with respect thereto. Except as expressly permitted or otherwise specifically provided by the APA or this Order, on and after the Closing Date, all Persons and entities holding Encumbrances or interests in all or any portion of the Purchased Assets (other than Permitted Encumbrances) arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets prior to the Closing Date, the operation of the Debtor's business prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser, shall be forever barred, estopped and permanently enjoined from asserting against the Purchaser or its successors or assigns, their property  or  the Purchased Assets, such Persons' or entities' Encumbrances in and to the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances (except the Permitted Encumbrances) on the Purchased Assets, if any, as provided for herein, as such Encumbrances may have been recorded or may otherwise exist. The transactions authorized herein shall be in full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which any of the Debtor is formed or authorized to transact business. Upon consummation of the transactions set forth in the APA and the receipt of the proceeds of the Sale of the Purchased Assets in accordance with this Order, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing,

or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under Section 363 and the related provisions of the Bankruptcy Code.

10.    All Persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the APA and this Order.

11.    All Persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee on the Closing Date.

12.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances of record except the Permitted Encumbrances.

13.    If any Person or entity that has filed statements or other documents or agreements evidencing Encumbrances on, interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtor on or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Encumbrances, which the Person or entity has or may assert with respect to all or any portion of the Purchased Assets, the

Debtor is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file  such statements, instruments, releases and other documents on behalf of such Person or entity with respect to the Purchased Assets.

14.     This Order is and shall be binding upon and govern the acts of all Persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in property, including any leased property or lease; and each of the foregoing Persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

15.     Purchaser acted in good faith in purchasing the Assets within the meaning of Section 363(m) of the Bankruptcy Code, and is therefore a good faith purchaser entitled to the benefits and protections of that statute. The provisions of Section 363(n) of the Bankruptcy Code have not been violated by Purchaser.

<u>Assumed  Contracts to be Assigned</u>

16.     On the Closing Date and upon Purchaser's or Debtor's payment of the relevant Cure Costs, the Debtor is authorized and directed to assume and assign each of the Assumed Contracts to the Purchaser free and clear of all Encumbrances, as described herein. The payment of the applicable Cure Costs (if any) by the Purchaser shall with respect to each

Assumed Contract (a) effect a cure of all defaults existing thereunder as of the Closing Date

and (b) compensate the Contract Counterparty for any actual pecuniary loss to such non-Debtor

party resulting from such default. The Purchaser shall then have assumed the Assumed

Contracts and, pursuant to Section 365(f) of the Bankruptcy Code, the assignment by the

Debtor of such Assumed Contracts shall not be a default thereunder. After the payment of the

relevant Cure Costs by the Purchaser, neither the Debtor nor the Purchaser shall have any

further liabilities to the Contract Counterparties other than the Purchaser's obligations under the

Assumed Contracts that accrue and become due and payable on or after the Closing Date.

      17.     Any provisions in any Assumed Contracts that prohibit or condition the

assignment of such Assumed Contracts or allow the party to such Assumed Contracts to

terminate, recapture, impose any penalty, condition on renewal or extension or modify any term

or condition upon the assignment of such Assumed Contract, constitute unenforceable

anti-assignment provisions that are void and of no force and effect. All other requirements and

conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the

Debtor and assignment to the Purchaser of the Assumed Contracts have been satisfied. On the

Closing Date, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Purchaser

shall be fully and irrevocably vested with all right, title and interest of the Debtor under the

Assumed Contracts.

      18.     On the Closing Date and upon Purchasers' payment of the relevant Cure Costs,

if any, the Purchaser shall be deemed to be substituted for the Debtor as a party to the

applicable Assumed Contracts and the Debtor shall be relieved, pursuant to Section 365(k) of

the Bankruptcy Code, from any further liability under the Assumed Contracts.

19.     Upon the payment of the applicable Cure Costs, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.     The Purchaser has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of Sections 365(b)(1)(C), 365(b)(3)  (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

20.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtor as a result of the assumption and assignment of the Assumed Contracts.

21.     Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtor or the Purchaser any assignment fee, default, breach or Claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

22.     The failure of any non-debtor counterparty to an Assumed Contract to timely file an objection to the assumption and assignment of the particular Assumed Contact set forth on the Cure Schedule constitutes a final determination of the aggregate cure amounts to be paid by the Debtor in connection with the assumption and assignment of the specified Assumed Contract to the Successful Purchaser. Additionally, the failure of any non-debtor counterparty to an Assumed Contract to timely file an Assumption Objection by the Assumption Objection Deadline shall operate to forever estop and enjoin such party from

19

objecting to the assumption and assignment of the Assumed Contract to the Successful

Purchaser, or from asserting any claim against the Successful Purchaser or the Debtor on

account of any additional cure amount or any alleged default occurring on or before the

Closing Date.

<u>Other Provisions</u>

23.     Effective upon the Closing Date, and except as otherwise provided by

stipulations filed with or announced to this Court with respect to a specific matter, all Persons

and entities are forever prohibited and permanently enjoined from commencing or continuing in

any manner any action or other proceeding, whether in law or equity, in any judicial,

administrative, arbitral or other proceeding against the Purchaser, its successors and assigns, or

the Purchased Assets, with respect to any (a) Encumbrance (other than a Permitted

Encumbrance) arising under, out of, in connection with or in any way relating to the Debtor, the

Purchaser, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing

of the Sale, or (b) successor liability, including, without limitation, the following actions: (i)

commencing or continuing in any manner any action or other proceeding against the Purchaser,

its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering

in any manner any judgment, award, decree or order against the Purchaser, its successors, assets

or properties; (iii) creating, perfecting or enforcing any  Encumbrance against the Purchaser, its

successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or

recoupment of any kind against any obligation due the Purchaser or its successors or assigns;

(v) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Order or other orders of this Court, or the agreements or

actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or

refusing to issue or renew any license, permit or authorization to operate any of the Purchased

Assets or conduct any of the businesses operated with the Purchased Assets.

24.      Except for the Permitted Encumbrances and Assumed Liabilities or as otherwise

expressly set forth in this Order, the APA, or any other document or agreement executed and/or

delivered in furtherance of or in connection with the transactions contemplated by the APA, the

Purchaser shall not have any liability or other obligation of the Debtor arising under or related

to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as

otherwise specifically provided herein or in the APA, the Purchaser shall not be liable for any

Claims against the Debtor or any of its predecessors or affiliates, and the Purchaser shall have

no successor or vicarious liabilities of any kind or character, including, but not limited to, any

theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or

substantial continuity, whether known or unknown as of the Closing Date, now existing or

hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated

with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date,

including, but not limited to, liabilities on account of (i) Claims arising under the Employee

Retirement, Income, Security Act of 1974, as amended, and Claims arising under the Fair Labor

Standards Act, (ii) Claims arising under Title VII of the Civil Rights Act of 1964, (iii) Claims

arising under the Federal Rehabilitation Act of 1973, (iv) Claims arising under the National

Labor Relations Act, (v) Claims arising under the Worker Adjustment and Retraining Act of

1988, (vi) Claims arising under the Age Discrimination in Employment Act of 1967, or (vii)

Claims arising under the Consolidated Omnibus Budget Reconciliation Act of 1985; (viii) any

products liability or similar Claims, whether pursuant to any state or federal laws or otherwise, including without limitation, any Claims related to the Excluded Assets; (ix) Claims arising under any bulk sales or similar law; (x) any taxes arising, accruing or payable under, out of or in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing; and (xi) environmental Claims arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et seq., or similar state statute. The Purchaser has given substantial consideration under the APA for the benefit of the holders of any Encumbrance. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances against or interests in the Debtor or any of the Purchased Assets.

25.    The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts). The Purchaser is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code.

26.     On or shortly after the Closing Date, the Debtor is authorized to distribute from the proceeds of the Sale any amounts required under the APA to consummate the closing of the Sale to the Purchaser.

27.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014, this Order shall be effective immediately upon entry and the Debtor and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

28.     The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

29.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

30.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any the Debtor is a party or which has been assigned by the Debtor to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

31.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in this Chapter 11 Case, the terms of this Order shall govern.

33.     To the extent there are any inconsistencies between the terms of this Order and the APA (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

**END OF DOCUMENT**

Prepared and Presented by:

By:    /s/ J. Nevin Smith
     J. Nevin Smith
     Georgia Bar No. 661110

SMITH CONERLY LLP
402 Newnan Street
Carrollton, Georgia 30117
770-834-1160

Exhibit A

Cure Costs

| CONTRACT NAME | LOCATION | DESCRIPTION | Pre-Petition Cure Amount | Post-Petition Cure Amount |
|---|---|---|---|---|
| American Profile # 110077 | Walker Messenger/Catoosa News | Magazine | | |
| American Profile #110073 | Rome News Tribune | | | |
| American Profile #10042 | Cherokee County Herald | Magazine | | |
| American Profile #110073 | Calhoun Times | Magazine | | |
| American Profile #110076 | Rockmart Jrl/Cedartown Stand. | Magazine | | |
| Four Start Rental | Calhoun Times | Building Lease | | |
| Spring Creek Properties | Mailroom | Mailroom Lease | $35,568.00 | |
| Morris (Peek Prop) | Cedartown Standard | Cedartown Building Lease | $2,850.00 | |
| Weiss lake Properties | Cherokee | Cherokee Building | | |
| William Hullander/Barbara Rogers | Catoosa County | Catoosa Building | $5,522.00 | |
| Lisa J. Heyer | Walker County Messenger | Walker Building | | |
| Google | NPCO | Email | | |
| Microsoft | NPCO | Microsoft Licensing | | |
| Monster | NPCO | Classified Online Agreement | $5,010.86 | $2,328.17 |
| Town News | NPCO | Web Hosting | | |
| Town News | NPCO | WEB Bkox Sports Stats | | |
| Tyco (Bought Out ADT) | Rome News-Tribune | Fire Alarm Monitoring Service | | |
| Video Jet | NPCO | Software renewal eff 01/2015 | | |
| Videojet 907172 | Mailroom | Software maintenance | $1,384.63 | |
| Atlanta Journal-Constitution | NPCO | Wholesale and Home Delivery Service Agreements | | |
| Newspaper Holdings, Inc. d/b/a Dalton Daily Citizen | NPCO | Printing Agreement | | |
| Dow Jones & Company, Inc. | NPCO | Wall Street Journal Delivery Agreement | | |
| Halifax Media Group d/b/a Gadsden Times | NPCO | Printing Agreement | | |
| New York Times | NPCO | Delivery Agreement | | |
| USA Today | NPCO | Delivery Services and Wholesale Agreements | | |